IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOSEPH PATRICK JONAS,

                    Plaintiff,

vs.                                     Case No. 11-1140-SAC

MICHAEL J. ASTRUE,
Commissioner of
Social Security,

                    Defendant.

MEMORANDUM AND ORDER

        This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties.

**I.  General legal standards**

        The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the
correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the

1

conclusion.   The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.   <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).   Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.   Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).   The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.   <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).   The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in

2

any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other

jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On August 18, 2010, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 14-24).  Plaintiff alleges that he has been disabled since July 5, 2007 (R. at 14). Plaintiff is insured for disability insurance benefits through December 31, 2012 (R. at 16).  At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since July 5, 2007, his alleged onset date (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairment:

history of lumbar spine fusion x2 (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 18).  After determining plaintiff's RFC (R. at 18), the ALJ determined at step four that plaintiff was unable to perform past relevant work (R. at 22).  At step five, the ALJ determined that other jobs exist in significant numbers in the national economy that plaintiff could perform (R. at 22-23).  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 23-24).

**III.  Did the ALJ err in her finding that plaintiff's impairments did not meet or equal a listed impairment?**

Plaintiff has the burden to present evidence establishing that his impairments meet or equal a listed impairment.  <u>Fischer-Ross v. Barnhart</u>, 431 F.3d 729, 733 (10th Cir. 2005).  In order for the plaintiff to show that his impairments match a listing, plaintiff must meet "*all*" of the criteria of the listed impairment.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  <u>Sullivan v. Zebley</u>, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990)(emphasis in original).

In his brief, plaintiff argues that his impairments meet listed impairments 1.04A and 1.04C (Doc. 8 at 7-13).  Those impairments are as follows:

1.04 *Disorders of the spine* (e.g., herniated

5

nucleus pulposus, spinal arachnoiditis,
spinal stenosis, osteoarthritis, degenerative
disc disease, facet arthritis, vertebral
fracture), resulting in compromise of a nerve
root (including the cauda equina) or the
spinal cord. With:

A. Evidence of nerve root compression
characterized by neuro-anatomic distribution
of pain, limitation of motion of the spine,
motor loss (atrophy with associated muscle
weakness or muscle weakness) accompanied by
sensory or reflex loss and, if there is
involvement of the lower back, positive
straight-leg raising test (sitting and
supine); or...

C. Lumbar spinal stenosis resulting in
pseudoclaudication, established by findings
on appropriate medically acceptable imaging,
manifested by chronic nonradicular pain and
weakness, and <u>resulting in inability to
ambulate effectively</u>, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2011 at 460, emphasis

added).  Inability to ambulate effectively is defined as follows:

1.00B2b. *What We Mean by Inability to
Ambulate Effectively*

(1) *Definition*. Inability to ambulate
effectively means an extreme limitation of
the ability to walk; i.e., an impairment(s)
that interferes very seriously with the
individual's ability to independently
initiate, sustain, or complete activities.
Ineffective ambulation is defined generally
as having insufficient lower extremity
functioning (see 1.00J) to permit independent
ambulation without the use of a hand-held
assistive device(s) that limits the
functioning of both upper extremities...

(2) *To ambulate effectively*, individuals must
be capable of sustaining a reasonable walking
pace over a sufficient distance to be able to
carry out activities of daily living. They

> must have the ability to travel without
> companion assistance to and from a place of
> employment or school. Therefore, examples of
> ineffective ambulation include, but are not
> limited to, the inability to walk without the
> use of a walker, two crutches or two canes,
> the inability to walk a block at a reasonable
> pace on rough or uneven surfaces, the
> inability to use standard public
> transportation, the inability to carry out
> routine ambulatory activities, such as
> shopping and banking, and the inability to
> climb a few steps at a reasonable pace with
> the use of a single hand rail. The ability to
> walk independently about one's home without
> the use of assistive devices does not, in and
> of itself, constitute effective ambulation.

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2011 at 456).

The ALJ found that plaintiff's impairments did not meet

listed impairment 1.04 for the following reasons:

> The claimant's impairment of degenerative
> disc disease does not meet Listing 1.04
> because he does not have one of the listed
> disorders (herniated nucleus pulposus, spinal
> arachnoiditis, spinal stenosis,
> osteoarthritis, degenerative disc disease,
> facet arthritis, or vertebral fracture
> resulting in a compromise of the nerve root
> or spinal cord) *in conjunction with* evidence
> of nerve root compression characterized by
> neuro-anatomic distribution of pain,
> limitation of motion of the spine, motor loss
> (atrophy with associated muscle weakness or
> muscle weakness) accompanied by sensory or
> reflex loss, and, in connection with the
> lumbar spine impairment, also a positive
> straight leg raising test (sitting and
> supine). Straight leg raising and range of
> motion are inconsistent, but the claimant
> does not have other examination findings
> which would meet or equal listing 1.04.
>
> Further, there is no evidence that indicates
> that the claimant has an "extreme" limitation

7

> in the ability to perform fine and gross
> movements effectively nor does he have an
> inability to ambulate effectively as defined
> in 1.OOB2b. Results of consultative
> examinations conducted February 23, 2009 and
> June 23, 2009, evidenced that although the
> claimant had mild difficulty with orthopedic
> maneuvers, his gait and station were stable
> and he was able to heel and toe walk
> without difficulty (Exhibits 3F/4 and 8F/4).

(R. at 18, emphasis in original).

Plaintiff argues that there is evidence in the record sufficient to support a finding that listed impairment 1.04A is met.  Plaintiff had two fusion surgeries, on January 2, 2004 and July 11, 2005 (R. at 440).  After those surgeries, plaintiff was diagnosed, based on radiographic studies, with right side L2-L4 foraminal stenosis (R. at 438).  Other testing suggested largely chronic left L5 radiculopathy (R. at 438).  Plaintiff argues that this evidence satisfied the first prong of 1.04 (Doc. 8 at 8).  Plaintiff further argues as follows that there is evidence that meets all the requirements of subsection A of 1.04 (the second prong):

> Plaintiff has cited the objective medical
> evidence that plaintiff demonstrated upon
> medical examinations on different occasions
> that all the five secondary requirements of
> Listing 1.04A are met. For ease of review,
> they are detailed as follows:
>
> (i) distribution of pain
> Henderson R. 305 (33 yr. history of
> pain, clonus [footnote: Clonospasm:
> a form of movement marked by
> contractions and relaxations of a
> muscle, occurring in rapid

succession.  <u>Stedman's Medical
Dictionary</u>, 24th ed., p.289]
present at Achilles bilaterally);
Estivo R. 342 (cramping pain
radiating into right leg &
occasionally left leg); Ohaebosim
R. 1185.

(ii) <u>limitation of motion of the
spine</u>
Henderson R. 306 (range of motion
limited in flexion & extension,
lumbar bend 14" to floor); Estivo
R. 343 (range of motion lumbar
spine severely limited); Ohaebosim
R. 1185 (scoliosis of spine).

(iii) <u>motor loss (atrophy with
associated muscle weakness or
muscle weakness)</u>
Henderson R. 306 (grip strength
54.8 lbs right, 20.6 lbs left), R.
307 (atrophy right calf 14", left
calf 14.5"); Estivo R. 342
(weakness in lumbar spine and legs)
R 343 (unable to tandem walk or
hop); Ohaebosim R. 1185 (use of
cane, inability to ambulate
effectively).

(iv) <u>accompanied by sensory or
reflex loss</u>, and
Henderson R. 307 (mild reflex loss
3+ knees, 2+ Achilles,bilaterally),
R. 307 (mild atrophy right calf
14", left calf 14.5"); Estivo R.
343 (deep tendon reflexes +2/4
bilaterally); Via Christi R. 1178
(muscle spasm in legs, tingling and
decrease sensation in legs).

(v) <u>positive straight-leg raising
test, both sitting and supine</u>.
Henderson at R. 306 (bilateral 50°
supine, 80° sitting)

(Plaintiff's brief, Doc. 8 at 9).

In finding that listed impairment 1.04A was not met, the ALJ simply paraphrased the language of 1.04A, then stated that straight leg raising and range of motion was inconsistent, and then concluded that plaintiff does not have any other examination findings which would meet or equal listed impairment 1.04.  The ALJ did not discuss the specific medical evidence that caused him to reach the conclusion that listed impairment 1.04A was not satisfied.

In the case of <u>Groberg v. Astrue</u>, 415 Fed. Appx. 65, 72 (10th Cir. Feb. 17, 2011), the court faced a similar situation:

> Groberg argues that the ALJ failed to properly assess his chronic low back condition to determine whether it met Listing 1.04A for Disorders of the Spine. The ALJ found that "[w]hile Mr. Groberg does experience chronic back pain, there is no evidence of nerve root compression, spinal arachnoiditis, or pseudoclaudication." *Id*. at 19. One of these conditions must be present to meet the listing. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A-C.

> Groberg correctly notes that the ALJ did not discuss the specific medical evidence that caused him to reach the conclusion that Listing 1.04A was not satisfied. *See Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir.1996) (requiring ALJ to discuss evidence relevant to his listing conclusions). Such a discussion may not be essential in a situation where the ALJ relied on the *lack* of evidence to reach his conclusion..., and *there is in fact no evidence*...<u>But where as here there *is* evidence that may meet the listing requirements, the ALJ is required to provide a proper analysis. Otherwise, it is impossible to know how the ALJ weighed the</u>

10

        evidence.

(underlining in last sentence added).

        As in Groberg, in the case before the court, plaintiff, in
his brief, cited to evidence that may meet the listing
requirements.  Furthermore, at the hearing, plaintiff's counsel
argued to the ALJ that listed impairments 1.04A and 1.04C were
met, and then discussed the medical evidence that he believed
demonstrated that the criteria of the listed impairment were met
(R. at 35-36).  However, even though the ALJ was clearly notified
at the hearing that plaintiff was asserting that the listed
impairment was met, and plaintiff's counsel discussed the
evidence that he believed supported such a finding, the ALJ
failed to discuss the specific medical evidence that caused her
to reach the conclusion that listed impairment 1.04A was not
satisfied.  Without specifically referencing any of the medical
evidence, the ALJ simply stated in a conclusory fashion that
"claimant does not have other examination findings which would
meet or equal listing 1.04" (R. at 18).  The ALJ did not respond
to the assertions by plaintiff's counsel at the hearing that the
medical evidence supported a finding that plaintiff's impairments
met a listed impairment.[1]  Therefore, it is impossible to know

_____

        [1]At the hearing, plaintiff's counsel specifically cited to the consultative examination
reports by Dr. Henderson and Dr. Estivo, as well as other medical evidence, in support of his
assertion that plaintiff's impairments met listed impairment 1.04 (R. at 35-36).  Although the
ALJ summarized the reports by these two physicians (R. at 19-20), at no time in her decision did

how the ALJ weighed the evidence, including the different
findings by Dr. Estivo and Dr. Henderson regarding plaintiff's
straight leg raising (R. at 306, 343).  The court will not engage
in the task of weighing this evidence in the first instance.
Clifton v. Chater, 79 F.3d 1007 at 1009; Neil v. Apfel, 1998 WL
568300 at *3 (10th Cir. Sept. 1, 1998).

        Although defendant, in his brief, presents an argument that
some of the 1.04A criteria are not met (Doc. 12 at 5-7), none of
these arguments were made by the ALJ in her decision in support
of her step three finding.  An ALJ's decision should be evaluated
based solely on the reasons stated in the decision.  Robinson v.
Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  A decision
cannot be affirmed on the basis of appellate counsel's post hoc
rationalizations for agency action.  Knipe v. Heckler, 755 F.2d
141, 149 n.16 (10th Cir. 1985).  A reviewing court may not create
post hoc rationalizations to explain the Commissioner's treatment
of evidence when that treatment is not apparent from the
Commissioner's decision.  Grogan v. Barnhart, 399 F.3d 1257, 1263
(10th Cir. 2005).  By considering legal or evidentiary matters
not considered by the ALJ, a court risks violating the general
rule against post hoc justification of administrative action.

---

the ALJ discuss how these reports or any of the other medical records caused her to reach the
conclusion that listed impairment 1.04A or 1.04C was not satisfied.  At no time did the ALJ
indicate what specific medical evidence demonstrated that one or more of the 1.04A or 1.04C
criteria were not met in this case.

Allen v. Barnhart, 357 F.3d 1140, 1145 (10ᵗʰ Cir. 2004).

For the reasons set forth above, this case will need to be remanded in order for an ALJ to review the medical evidence and make proper findings regarding whether the evidence establishes that listed impairment 1.04A is met in this case.  In making this finding, the ALJ should also consider the letter of Dr. Ohaebosim, dated July 20, 2010 (R. at 1185),[2] which was submitted after the ALJ decision, but which was later presented to the Appeals Council.[3]

Regarding listed impairment 1.04C, which requires a showing of an inability to ambulate effectively, the ALJ made a finding that there is no evidence that plaintiff has an inability to ambulate effectively (R. at 18).  However, in light of the fact that this case is being remanded in order to make new findings regarding 1.04A, on remand, the ALJ shall make new findings regarding 1.04C, especially in light of the opinions expressed by Dr. Ohaebosim, which were not before the ALJ when she issued her

---

[2]Dr. Ohaebosim indicated that plaintiff was his patient.  Dr. Ohaebosim stated that plaintiff, when he arrived on July 20, 2010, was dragging his right leg and could not sit for more than five minutes without moaning and groaning.  Clinical examination revealed severely atrophied paravertebral muscles bilaterally and very tender to the touch.  He had scoliosis of the spine.  He was unable to stand up straight.  His right hip was tender to the touch with poor range of motion.  Dr. Ohaebosim noted that plaintiff's right leg was shorter than the left leg and the right calf smaller than the left one.  Dr. Ohaebosim expressed the opinion that plaintiff was in very poor physical and mental health and "cannot engage in gainful employment" (R. at 1185).

[3]The Appeals Council noted that this new evidence was presented to them (R. at 5), and simply stated in their decision denying review that "We found that this information does not provide a basis for changing the Administrative Law Judge's decision" (R. at 2).

decision.

**IV.  Other issues raised by the plaintiff**

Plaintiff also argues that the ALJ erred in her analysis of plaintiff's credibility, in application of the grids at step five, and plaintiff's alleged inability to stoop.  The court will not reach these issues because they may be affected by the ALJ's resolution of the case on remand after giving further consideration to the medical opinion evidence, and making new findings on listed impairment 1.04A and 1.04C.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

However, the court will briefly address three specific matters raised by the plaintiff.  First, as noted by plaintiff, the ALJ stated the following:

> In addition, the claimant testified to the
> need to alternate positions frequently, as
> well as the need to lie down several times
> per day.  However, the claimant reported no
> such need during either of his consultative
> examinations (Exhibit 3F and 8F).

(R. at 21).  However, in Exhibit 3F, Dr. Henderson noted the following:

> The patient estimates he can sit for five
> minutes, stand for two minutes, and walk for
> 20 minutes before being limited by
> discomfort.

(R. at 305).  In Exhibit 8F, Dr. Estivo stated the following:

> Alleviating factors include changing
> positions and walking.

          . . . . . . . . . .

14

> He states that he is not able to work due to
> his inability to stay in a position for
> prolonged periods of time...He has trouble
> sitting, standing, bending, lying flat, or
> staying in a position for a prolonged period
> of time.

(R. at 342).  Although the ALJ represented that plaintiff did not

report a need to alternate positions frequently during these two

examinations, on remand, the ALJ must take into consideration the

fact that the two examinations report that plaintiff indicated

that he cannot stay in one position for prolonged periods of

time, and must change positions fairly frequently.

Second, the ALJ relied on the lack of follow-up treatment by

the plaintiff to suggest that his limitations are not as

problematic as alleged (R. at 21).  However, on January 27, 2009,

plaintiff reported that he did not have medical insurance at this

time and did not have money to see a doctor (R. at 206).  The

10th Circuit, relying on the case of Thompson v. Sullivan, 987

F.2d 1482, 1489-90 (10th Cir. 1993), has repeatedly held that the

inability to pay may justify a claimant's failure to pursue or

seek treatment.  Threet v. Barnhart, 353 F.3d 1185, 1190 n.7

(10th Cir. 2003); Norris v. Apfel, 215 F.3d 1337 (table), 2000 WL

504882 at *8 (10th Cir. Apr. 28, 2000); Smith v. Apfel, 149 F.3d

1191 (table), 1998 WL 321176 at *4 (10th Cir. June 8, 1998);

Snead v. Callahan, 129 F.3d 131 (table), 1997 WL 687660 at *4

(10th Cir. Oct. 31, 1997); see also Eason v. Chater, 951 F. Supp.

1556, 1562 (D. N.M. 1996)(claimant should not be penalized for

15

failing to seek treatment that they cannot afford); <u>Hockenhull v.
Bowen</u>, 723 F. Supp. 555, 557 (D. Colo. 1989) (evidence of
nontreatment is of little weight when claimant's failure to seek
medical treatment can be attributed to their inability to pay for
such treatment).

   While failure to seek treatment may be probative of
severity, the ALJ has a basic duty of inquiry to ask the
plaintiff why he/she did not seek treatment, or why it was
sporadic. <u>Kratochvil v. Barnhart</u>, 2003 WL 22176084 at *5 (D.
Kan. Sept. 17, 2003). Similarly, SSR 96-7p states the following:

> On the other hand, the individual's
> statements may be less credible if the level
> or frequency of treatment is inconsistent
> with the level of complaints, or if the
> medical reports or records show that the
> individual is not following the treatment as
> prescribed and there are no good reasons for
> this failure. <u>However, the adjudicator must
> not draw any inferences about an individual's
> symptoms and their functional effects from a
> failure to seek or pursue regular medical
> treatment without first considering any
> explanations that the individual may provide,
> or other information in the case record, that
> may explain infrequent or irregular medical
> visits or failure to seek medical treatment.</u>
> The adjudicator may need to recontact the
> individual or question the individual at the
> administrative proceeding in order to
> determine whether there are good reasons the
> individual does not seek medical treatment or
> does not pursue treatment in a consistent
> manner. The explanations provided by the
> individual may provide insight into the
> individual's credibility.

SSR 96-7p, 1996 WL 374186 at *7 (emphasis added); <u>cited with</u>

approval in <u>Madron v. Astrue</u>, 311 Fed. Appx. 170, 178 (10th Cir. Feb. 11, 2009).  The fact than an individual may be unable to afford treatment and may not have access to free or low-cost medical service is a legitimate excuse.  <u>Madron</u>, 311 Fed. Appx. at 178; SSR 96-7p, 1995 WL 374186 at *8.  Therefore, on remand, the ALJ should consider plaintiff's statement that he did not have medical insurance and did not have money to see a doctor in accordance with SSR 96-7p.

Third, plaintiff argues that the ALJ failed to consider the evidence that plaintiff cannot stoop (Doc. 8 at 21, 14). However, the ALJ relied on a state agency assessment that opined that plaintiff could occasionally stoop (R. at 21-22, 345-352). Plaintiff did not contend that the ALJ erred in his reliance on this assessment, which made findings after reviewing both the examination by Dr. Henderson and Dr. Estivo (R. at 352).

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 1st day of May, 2012, Topeka, Kansas.


s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge


17